for the fourth circuit. Oh, yay. Oh, yay. Oh, yay. All persons having any manner or form of business before the Honorable United States Court of Appeals for the fourth circuit are admonished to draw nigh and give their attention for the court is now sitting. God save the United States and this honorable court. Good morning. Please be seated. Oh, yeah. No, they're not either. Well, they're new to me. They're not new. We're having your argument whenever you're ready. Thank you. The district court in this case abuses discretion by granting the rule 60 B6 motion because the motion was not a true 60 B motion but a successive habeas petition and also by failing to find the motion untimely pursuant to rule 60 C in this court's opinion of Moses. Additionally, the district court erred by stating that it would order an evidentiary hearing in these habeas proceedings were a full and fair evidentiary hearing already took place in state post-conviction on this issue. In his rule 60 B6 motion, Richardson argued that, one, the change in the law brought by Hall was extraordinary and that, two, he was diligent after the decision in Hall because he filed for relief in state court to exalt state remedies, asserting those are the two Gonzales factors, extraordinary circumstances and prompt action. The district court agreed with those assertions and added a ground not asserted in the 60 B6 motion that the proceedings were, quote, arguably defective, end quote, because the district court did not order an evidentiary hearing prior to its January 2011 order. Under Weinstock and Gonzales, it's clear the 60 B6 motion filed was merely a second try of the earlier intellectual disability claim from the first habeas petition. The 60 B motion filed by Richardson sought relief from the state court termination on the intellectual disability claim as he did in his 2254 petition. Therefore, the motion was a second or successive habeas, excuse me, habeas corpus application as defined by Gonzales. In Gonzales, the Supreme Court in footnote four said, when a movement asserts a ground that would entitle him to relief under 2254 A and D, he is making a habeas corpus claim. In the 60 B motion, there is no allegation or claim of defect in the federal proceedings or the district court order. He argued from his 2005 and 2015 filings in state court on the underlying merits of the claim. In a 60 B6 motion, the movement seeking relief from the judgment order and the attack is on the district court judgment. Subsequent state court proceedings, which occurred in 2015 in state court when he filed his MAR that was successive, should not affect the previous state, excuse me, federal district court order. And that again shows that it was an argument on the underlying merits of the claim. Well, has the district court or this court ever considered adaptive functioning? This court's opinion, which was the last ruling, held that because he did not meet the first prong of the two-prong test, that it didn't need to consider the adaptive functioning prong. And as I understand it, North Carolina law is that you have to do both. They tell us that now, right? Yes, ma'am. It's not like if you don't meet one, it's all over. You have to consider both. Isn't that correct? If you don't meet one, it is all over in the sense your claim fails, but not in the sense you're barred from presenting evidence. Why would you present evidence if your claim fails? I don't understand. Well- I thought that even if you flunked the- if you looked like you had a 70 or 72 degree mental acuity, you still had to look at this adaptive functioning. Is that not right? And I thought that's what North Carolina law says it does do. We misunderstood that, but that is now what North Carolina law- The Supreme Court said they did that, and North Carolina says it does that. Is that not right? The law- You don't just automatically say that someone is- doesn't qualify for saying they're impaired because they have the 70- because of their score. Isn't that correct? You have to go look at the adaptive functioning as well. It- Under State law? I'm just- I don't think this is a hard question. Well, perhaps I'm just not understanding. Maybe I'm not saying it right. Maybe one of my colleagues can help on this. Well, the State changed its position during the course of the litigation, did it not, as to whether the evidence of adaptive functioning was required under North Carolina law? Well, it says that's always been its position. No, no. The State hasn't changed its position, and I'm happy to address that. The State asserted and argued for a bright-line test and consistently did that, saying if you're not a 70, under the statute, you can't prevail because you have to show both parts of that, and if you can't meet the 70, you don't get it. Now the State argues that you do need to consider adaptive functioning if you're within the range of error, right? Yes. The State argued that you shouldn't. In fact, the State in this case, the district attorney argued to the superior court judge in 2005, you shouldn't even let them put on evidence of adaptive functioning because they haven't met the 70. They haven't shown that part of the prong, and the superior court judge denied that and let them put on any evidence they wished. Right. But we never, no federal court has ever considered the adaptive functioning evidence, right? Correct. The ruling of this court was to see that. Well, I guess what I'm struggling with, Your Honor, is I don't, North Carolina didn't say, oh, no, we were wrong about that law. We haven't run from what we argued earlier, which was you have to, we argued bright line test until Hall came out. Right? I understand the Supreme Court changed the rules on you, and it cited your case, and I understand all of that. Right. But that's all by way of background. But has this court or the district court ever considered adaptive functioning? No, ma'am, it's not ruled on it. So isn't that a defect in the process that was given to this man in the district court in the first habeas? No, ma'am. No, okay. But you're required to consider it under North Carolina law now, right? Isn't that your position? Well, my position is that under the law that was modified subsequent to Hall is there is still that two-part test, but, yes, that the things mentioned in Hall, standard error of measurement, and those statistical things would have to be considered, which would mean it not a hard line 70, but that the, you look at a range. Like, for example, the ---- Well, when we considered it the first time, we considered this as a hard line 70. Yes, ma'am. And so did the district court. Yes, ma'am. And so isn't that a defect in the proceedings? No, ma'am, I don't believe so because ---- Okay. And the reason why is the law at the time, Hall did not come down when the state court made its ruling or this court reviewed the state court ruling. If this court were to grant the successive habeas petition motion, which the state opposes, but or say the Rule 60 should be reopened, then Hall, the opinion in Hall and the opinion in Moore, I would argue, could not be considered by the federal district court because that was the situation in Shoup v. Hill, which came down on January 7th, 2019. Where the Sixth Circuit granted habeas relief on an intellectual disability claim based in part on Moore v. Texas, and the Supreme Court said the reliance on Moore was improper. But Hall was in effect at the time of the second MAR hearing in the state court, was it not? Yes. And to what extent does that change the analysis? Or does it? I don't believe it does, Your Honor, because the petitioner cannot reset the 2244 bar on claims by filing another successive state court MAR. And so, yes, Hall was in effect, and that's what he argued in the state court proceedings. So you're saying that under Shoup, we're bound by the state of the federal law at the time. Yes, ma'am. But what year are we talking about that's locked in under Shoup for our consideration? The 2005 evidentiary hearing, and then the subsequent 2008-2007 habeas filing that started the federal habeas. And the Supreme Court said that Hill's intellectual disability claim can be evaluated solely on holdings of this court that were very clearly established, that were clearly established at the relevant time. But the second petition was filed after Hall, right? You mean the state court proceedings? Yeah. Yes, ma'am. Okay. But I don't think refiling a state court proceeding would change the analysis of this court, which is when it first had its review and analysis of intellectual disability claim. The state court proceeding was held to be procedurally barred, and then the alternative without merit, because even if the merits determination, or even if it wasn't procedurally barred, the superior court held that it didn't change its earlier determination. Okay. So the only way, then, that we can – do you agree, then, the only way that we can consider Hall is to grant authorization for a new 2254? I don't even think you – I don't think it could be considered then. I think Shoup v. Hill is pretty clear that it has to be evaluated, the holdings of the court that were clearly established at the relevant time, the state court decisions that – from 2005. So I don't believe in either way Hill and Moore can be retroactively applied. See, what's bothering – what's concerning me about your theory is then, under your theory, no defendant could ever get a benefit of a later Supreme Court decision. Well, that – I understand what Your Honor is saying, but this court in Moses said prior judgment should not be reopened merely because of inconsistency with United States Supreme Court decisions. And so if Rule 60 applies to habeas proceedings, but like all the rules of civil procedure, they only apply insofar as they're not inconsistent with the habeas statutes. And as detailed in Gonzales, and this court talks about in Weinstock, Rule 60 cannot be a vehicle to avoid the 2244 prohibitions on claims previously raised or new claims not raised. So – and if it is in violation of those, then it should be denied. Hall is not retroactive. Moore is not retroactive. And the Supreme Court made that clear just as recently as earlier this month. So I understand the court – Made it clear that Hall is not retroactive? How did it do that? Well, it – Hall was – they said we applied Hall and Moore. And I guess you're right, Your Honor. I shouldn't say they made it clear. They made it clear Moore wasn't retroactive, but they've never held Hall retroactive. So it seems without the – I think the test for retroactivity is the Supreme Court has to say that it's retroactive. Or by necessary implication in other Supreme Court cases like Penry, right? Yes, ma'am. That's correct. But I would say that Moore goes against that in the sense that Moore was an application of Hall, and then in Shoup v. Hill, the court said that you have to look at the holdings of this court that were clearly established at the relevant time, which to me would seem to indicate that it was not going to consider Hall to be retroactive. But it doesn't expressly say that. So I don't – I'm sort of bleeding over into the next argument, but Your Honor asked about the brand. Yeah, but see, Shoup didn't deal with 2244 at all. And the gatekeeping function didn't. I mean, I'll go through Shoup again, but I don't think it talked about that. I could be – I could be mistaken on that. But it does – There wasn't a second. Shoup involved in initial habeas petition, so it couldn't have been 2244, could it? No, ma'am. Yes, ma'am, you're correct. It involved – Hill was improper under 2254d1 on the clearly established law. So in 2254, d1 would apply if this Court granted the Rule 60 – excuse me, affirmed the grant of the Rule 60b or granted the successive habeas petition. And therefore, it seems that Hall can't be in extraordinary circumstance if at the same time it couldn't be considered if the Rule 60b was granted. All right. I think your time has expired. Maybe we'll let the other side talk a little bit. Can I ask that you just call the Rules of Use of Discretion? Thank you. Mr. Rose? Thank you, Your Honor. May it please the Court, my name is Ken Rose. And along with Stanley Hammer, I represent the petitioner Timothy Richardson. We plan to argue two issues. First of all, whether the Rule 60b motion was a successive petition and not a 260b motion. And secondly, whether extraordinary circumstances existed that justified the district court's grant of the Rule 60b6 motion. And, of course, we'll address any other questions the Court has. The true 60b motions challenged defects in the integrity of the federal court proceeding. And as Your Honor, Judge Motz inferred, there was no reaching in the merits by the district court in its original 2011 order. It did not reach adaptive behaviors. It did not reach what we now know was the state law requirements of findings of intellectual disability. In 2015, the state superior court found that North Carolina does not apply a strict IQ cutoff of 70 or below in determining intellectual disability. The state court further held that North Carolina law allows for consideration of the Steering Era measure. And Richardson's scores of 73 and 74 required consideration of deficits in adaptive behavior in determining whether a defendant is intellectually disabled. The state court further held that there was no strict cutoff in place under North Carolina law when in 2005 it first rendered its decision on Mr. Richardson's eligibility for the death penalty under Atkins, and that in 2005 it had considered the Standard Era measurement. These are state procedural rules that the U.S. District Court misconstrued in 2011 by applying a strict cutoff and by declining to address the adaptive behavior deficits and the merits of Mr. Richardson's Atkins claims. The state court is saying or said in 2015 that the alleged state procedural rule requiring a strict cutoff and applied by the district court never existed under North Carolina law, did not exist in 2001 when the North Carolina statute exempting persons from intellectual disability was first passed, did not exist in 2005 when the state post-conviction court decided Richardson's intellectual disability claim, did not exist in 2011 when the district court rendered its habeas decision, and did not exist in 2015 when it clarified the law. Right, but isn't your case really an attack on the district court's original 2254? Isn't that really what this is about in substance? It's a, it's a, Your Honor, And you're using the shroud or vehicle of the Rule 60B to accomplish or to attempt to accomplish that? No, Your Honor, it's not. Okay, why not? It's an attack. Why not? For two specific reasons. Well, I'm a little confused. That's why I need your help. Yes, Your Honor. Tell me. When we followed our Rule 60B, we did allege that it violated the law in, as expressed in Hall, but it also violated the law, state law, as expressed by the state court in 2015 and, as clarified, violated what the state court did in 2005 because the federal court applied a strict cutoff and therefore did not reach the merits of the constitutional claim. And that is a defect in the integrity of the federal court proceeding. So we're not challenging the merits under the 60B. We're challenging the defect in the federal court's decision not to reach the merits because of his misunderstanding of state law. Well, how did an evidentiary hearing come into all of this? Your Honor, that, the federal district court judge, when he was ruling on the 60B, looked at what we had raised and looked at what we said about Hall, and he said, well, you know, I should have granted an evidentiary hearing. Had you suggested, had you initiated that idea? No, Your Honor. We had not. Okay. The, in terms of what had been raised in the 60B, I think it's important to consider not just what we said in our motion but what the State said in response because the State's response was, well, Hall doesn't change anything. The State's response was, and this is at joint appendix 1416 and 1417. This is what, in what time frame? In this present iteration or 2011? What are you talking about? Your Honor, we're talking about, excuse me, I'm talking about the State's reply to our rule 60B motion that we filed in federal district court. Okay. This time around. Okay. The State argued that the superior court rejected the State's argument at the outset of the hearing that petitioners should have to show an IQ of a score of 70 or below before being granted an opportunity to present evidence at the hearing, similar to what Mr. Bam argued just now. Right. Well, in fact, the State court did give you, did have a big evidentiary hearing on those factors, right? Yes, Your Honor. That's correct. Okay. So the mistake is by the federal courts, in your view? The State is, the federal court's misunderstanding of State law. It's that, it's Thompson versus Bell. It's a similar, it's almost, it's a similar type of procedural, misunderstanding of State procedural law that happened in Tennessee. But your case is really about Hall, isn't it? No, Your Honor, it's not. Why not? We can win without Hall. Okay. Tell us how. The discussion about retroactivity, it's interesting and it's helpful to us, but it's not essential in this case. We win without Hall because State law, State courts said they always interpreted State law consistent with Hall, similar to what the U.S. Supreme Court said about Louisiana courts in, excuse me, Your Honor, in Brumfield. So this is really Brumfield without the 60B. So in Brumfield, the court says that we're going to first apply the structure of Louisiana State law to determine whether or not the intellectual Adkins was applied contrary to or against the federal law. And Brumfield was decided after Hall. So the question is very similar. And the question, well, should this court apply Hall, didn't come up in Brumfield because the State court, Louisiana State court, had interpreted State law consistent with Brumfield, had anticipated the law in Brumfield. So the retroactivity question never came up. And yet the U.S. Supreme Court found that the 75 in Brumfield was an unreasonable interpretation of the facts in that case. So here we had a 73 and a 74, and to the extent that the court considered that as a cutoff, that would have been an unreasonable interpretation. Not required by Hall, but required by State law. Because in Adkins, the court has said, well, we first looked at State law. And if you looked at State law and applied what we now know, what has been clarified as the correct State law interpretation. What you're suggesting is that we take the State at its word. The State said that this was always the case. And, in fact, the State court had a hearing which would have satisfied the requirements of saying that both of these requirements. There wasn't a strict cutoff, but you looked at both, right? That's correct, Your Honor. But in the real world, the State, at least in front of us, has changed its position after Hall. So this goes back to does that do in, then, your 60B argument? Your Honor, you don't have to actually pay attention to what the Attorney General says, because we know what the State courts have said. And so I would ask the court to look at Joint Appendix 1234 to 1235, which is. . . When you say what the State court has said, are you talking about the 2015 MAR? Yes, Your Honor, the 2015 order on the MAR. So the court. . . Okay, what page is that? 1234, 1235. 1234, paragraphs 19 and 20, the court said, Hall v. Florida has no effect on this court's prior determination that Richardson is not intellectually disabled. Has no effect. Why? Because we have interpreted our statute in 2005, the court said, and this is the same judge that's deciding the 2005 case, consistently with what now Hall says. And if you go look at what happened in 2005, it does look like they do that, because there's all this evidence about the adaptive factors. That's right, Your Honor. So what you. . . If you would prevail on your argument that you have a valid 60B claim, what you get is a remand to the district court to consider the record, but no new hearing, correct? Well, that could be correct, Your Honor. What do you mean could be? What would give you the right to a new hearing? So. . . If you're saying that the law is exactly the same as it was then. . . Yes, Your Honor. And there's already been a hearing by the State court on the law as it exists at this moment, how could you possibly get a hearing? Your Honor, we might get a hearing. Why? Because you have the State court record. Right. We do have it. But even with the State record under Townsend and under the ADPA, there are certain circumstances where Townsend, for example. . . Let me take one at a time. Townsend v. Sane, the second criteria of the six Townsend factors is that the State factual determination is not fairly supported by the record as a whole. So we meet that. Then under 2254D and 2254E, we feel that we meet those criteria as well. So even where the State court has held a hearing, in certain circumstances, the Federal District Court judge can grant an evidentiary hearing. But we don't need that in terms of extraordinary circumstances or in terms of defect in the integrity of the Federal proceeding. And so I want to make sure that I'm clear in what I'm saying, that in order to win this or affirm this judge's discretionary ruling on 60B, it's enough to show that there was a defect in the integrity of the Federal court proceeding, and that defect was a misunderstanding of State law. Well, how would you ever get an evidentiary hearing? I just don't understand that. Because the only way you get the evidentiary hearing would be if there's a new rule of constitutional law and you're proceeding under 2254, right? No, Your Honor. That would be 2244. How do you get a new hearing if the State has already heard it? And you waited. In other words, you've come in on 60B, and you say the State law always considered adaptive function. So you could have filed this years ago, but you didn't. And then all of a sudden we're given this new. Right, Your Honor. We could not have filed this. I do want to be very clear about this. Okay, why not? We could not have filed this years ago because the first time we knew, this court knew, the district court knew that the State law wasn't as this court thought it was, was in 2015 when the State court in June of 2015 said, we've always applied standard error of measure. Right. We've never applied a strict error. But that doesn't – I don't think that answers the question as to why you get an evidentiary hearing or why you couldn't get it. No, Your Honor. I agree that that doesn't answer that question. I think what answers that question is if we look carefully at the criteria under 2254D1 and D2, and examine whether or not the State court decision in 2005 was contrary to or in reasonable application of established federal law, we meet that criteria. But your Rule 60 motion just relies on Hall, doesn't it? Our initial motion relied on Hall. We also tried to amend. When we went back, this court remanded the case. We made an effort to amend. The judge said that it was moot because the case is on appeal at the point when we asked for it. But we asked for him to amend the ruling on the Rule 60B6 motion specifically because we wanted to put before the court the point that State law since 2005 had always been that there was no strict cutoff of 70 or below and that they could consider adaptive behavior deficits in the decision on whether someone is intellectually disabled. So our argument is under 60B, this case is in precisely the same position as Thompson v. Bell out of the Sixth Circuit. In Thompson v. Bell, the State court's decision indicated that the district court had failed to recognize the State's own procedural rule, thereby undermining the principle of comity on which the ADPA is based. Thompson v. Bell cited Inri Abdur-Rahman, another Sixth Circuit case that was decided initially before Gonzales v. Crosby, was remanded in light of Gonzales v. Crosby, and then was affirmed on the issue of whether 60B was an appropriate mechanism when there's a clarification of State law that shows there's a defect in the integrity of the State court proceedings. The court in Thompson v. Bell said refusing to recognize State law would deserve the comity interest enshrined in the ADPA by ignoring the State court's view of its own law. A Federal court's respect for another State's law was not at issue in Gonzales, in which the Rule 60B motion was based solely on a change in Federal decisional law interpreting a Federal statute. The Eleventh Circuit has considered a similar issue in Buckland v. Secretary of Corrections of Florida, and they've come to the same conclusion. It's an unpublished opinion, but it's the same conclusion as the Sixth Circuit in Thompson v. Bell. We have found no case where District Court misunderstood what the State court rule was, where the courts have not said, well, that's an inappropriate vehicle for Rule 60B. So as far as we could find, a State law clarification of State law, where the District court got State law wrong, has always been a vehicle for Rule 60B relief. And I don't want to beat a dead horse, but I'm still struggling with why your 60B motion is relying on Hall to allow the reopening of your 2254. Your Honor, our original motion was relying on Hall. We became aware. So you've abandoned that? Is that what you're saying? Well, I think that's not our best argument, Your Honor. I want to be frank about that. I don't think our best argument, because there's language in Gonzalez v. Crosby, as the Court knows, that suggests that just a mere change in Federal law, change in Federal law is not sufficient basis for Rule 60B-6. However, this is not what we have. And I think there is also, I mean, I think there's some suggestions by some jurisdictions that change in Federal law is one of the extraordinary circumstances this Court can consider. So we didn't want to abandon that point. I hate to interrupt you, but do you agree that the ruling by the District judge on your Rule 60B motion and the reasons he gives for it in his order are wrong? We agree that part to that, part of that. Okay, well, that's fine. We don't agree that his ruling was wrong. The ultimate ruling. The ultimate ruling is correct. It's correct for, we believe, it's actually correct on evidence you're hearing in our view. But the better argument is the one that the State made in reply to our Rule 60B motion, which is the State has always never had a strict cutoff, and that in 2005 there was no strict cutoff, and that the implication is the Federal court got it wrong. So the State never said in its reply, you got it wrong in 2011, but they did say State law has always complied with Hall. If that was true, then it was clear that the Federal court got it wrong.  Is the remedy of that Rule 60 or are there other remedies? Your Honor, it's absolutely Rule 60. It's under Jennings. This Court can look at the record, examine the record under the case we just submitted to the Court, Jennings v. Stevens, and affirm on any basis that that's evident from the record. Okay. Thank you. Is my time up, Your Honor? Yes, it is. Thank you. I'd like to address the State court. The State law has always never had a bright line. I believe that overstates what the State has argued and overstates what the Superior Court judge ruled. The Superior Court judge in this case, in 2015, didn't clarify the law for the whole State, but clarified how it was applied in this case. And absolutely, the State always argued that it was a bright line test for the first prong of the then mental retardation, now intellectual disability statute. After Hall, that changed. And in the new law, it's still a two-part test. You have to show both subaverage general intellectual functioning existing concurrently with significant limitations in adaptive functioning. So you still have to show both parts of that. It's just there is clarifying language that a standard of error measurement will apply and that a defendant is not precluded from presenting additional evidence of intellectual disability, whatever that would be. And that is what happened in this court, in the sense of there was no limitation on the evidence presented. In the order, the 2005 order, the court does not apply standard of error measurement, the Superior Court, but finds he doesn't meet either of the two prongs and finds he was not mentally retarded, as the terminology was at that time. So there was no – the Florida statute and North Carolina statute are similar. Florida had a Florida Supreme Court opinion that clarified it. North Carolina did not. But that did not mean that the State did not argue for a bright line on that first prong, both in the State courts and this court. Okay. Could you help us by telling us the point you're making? Well, I'm sorry. The point is, I think it overstates it to say the State has now said there's no – it's always – it's never had a bright line test since 2005. I don't think there was a misunderstanding. That was the argument that was made consistently. Well, okay. I don't know where exactly that goes. Okay. So you're – if you – if we should read this record and conclude that we, federal courts, erroneously thought that the State had a bright line test, does that get them 60B relief? I know you don't think we – maybe you don't think we do that. I can't really understand whether you think we did that or not. But assume for a moment that we conclude that we did say that. I don't believe that gets 60 – well, the State court addressed both prongs. I understand this court only addressed the intelligence question prong. So does it get them 60B relief or not if we had concluded that they were only – the only thing before us was the first prong? I don't believe so because until Hall comes down, there's no indication that you couldn't have a bright line test on that. Even though we've misinterpreted State law? I don't believe you did misinterpret State law. Okay. But, okay, for purposes of my hypothetical, assume that we misinterpreted State law and that State law had always said you look at both prongs, just for purposes of my hypothetical. Would that – and then we, the district court, and we both said, oh, no, no, no, all you do is look at the first prong. I think that would be the best argument, yes, ma'am. Well, would that get them 60B relief now? If this court had misinterpreted State law. All I can say is perhaps because the second prong of the test, but the court didn't address that. All I can say is that perhaps the court, yes, perhaps the court could do that. That would give him 60B relief if, if, if that was the case. If there was, yes, if there was clearly established State law and this court, I don't want to say ignored it, but, I mean, your hypothetical. Okay. But that's not what happened here. Petitioner says he can win without Hall, but that was the sole extraordinary factor in the 60B motion. And, lastly, I didn't get your chance. But you just told me I thought that that was an extraordinary factor if that was the case. If you had a federal court, district court misinterpreting State law and we misinterpreting State law saying that you only require one element, that would give them, if that's so, and you argue it's not so, but if that's so, then they would be entitled to 60B relief. That would be an extraordinary circumstance. But Hall came down years later. I understand your argument, but this is a hypothetical. And I thought I, yes, ma'am. Okay. And the hypothetical is that we, in the first habeas petition, misunderstood North Carolina law and we said you only need this one factor, we, the federal court. And this court, the federal appellate court, agreed. Okay. That's the hypothetical. Right? Yes, ma'am. And, in fact, that is not North Carolina law we know now. And it never was North Carolina law because prior to those two opinions, North Carolina looked at both elements. Right? That's what the North Carolina court says now. It says it always has. And, in fact, it did. If you go look at the ‑‑ It rolled on both prongs, yes, ma'am. Yes. But it still is a two-prong test. You had to show both, and that's the same as the law is today. You have to show both. Right. And if we had misinterpreted and said, no, you only have to look at one prong, that would be a violation that would get you 60B relief, if we'd done that. No, ma'am, because you only ‑‑ if you fail either one of those two prongs, you fail it. Okay. And that's the way the statute was at the time. It's the way it is now. Okay. Then why would you look at both if you were the trial court, which the trial court did here, the North Carolina court? The state supreme court. Yes, ma'am. He allowed evidence on both and ruled on both. I guess it's sort of like in a strickland analysis, a court ruling on both. But he ruled on both prongs. Okay. Because if ‑‑ and I think that's the better path to rule on both prongs because if a cert petition was granted at the Supreme Court in North Carolina and they found error on one of the two prongs, that would be important how he ruled on both prongs. Why? Why would it make any difference, according to you, because you could just succeed on one prong? Correct. That's why it would be important because if they ruled one prong was wrong, then the argument would still be that the order was still correct. I confess to having had trouble following all of these arguments because I don't remember seeing them in the briefs. Is this issue raised properly? Is this issue properly before us? Your Honor, no. This court reviews the 60B grant on abuse of discretion by the district court. I think, therefore, you look at the factors identified by the district court in its order, which was agreeing with Petitioner that Hall was extraordinary and then the evidentiary hearing not being granted. In the supplement authority, may I finish answering that question, Your Honor? Sure. In the supplement authority filed by Petitioner, the Jennings case, in that case there wasn't a cross appeal and a habeas, but the federal district court had ruled on the error that they were ending up arguing a reason why the order was on the order on appeal. Here, the district court only ruled on the evidentiary hearing in Hall. Hall doesn't apply. It's not retroactive. And as I've said briefly, there's no evidentiary hearing allowed under Columbia Penholster because there was a full and fair hearing where there was no restriction on evidence, which would distinguish it from the Winston case where this court talked about the state foreclosing a full development of the record. I ask that you find the order wasn't abuse of discretion. Do we have more questions? All right. I think I understand that we have the same lawyers going in the next case. Is that correct? Would you mind if we came down at the end of that argument and shook your hand instead of doing it twice? Okay. Thank you.
judges: Diana Gribbon Motz, Barbara Milano Keenan, William B. Traxler Jr.